UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAUL DE LA TORRE,<br><br>　　　　Petitioner,<br><br>　v.<br><br>TODD M. LYONS, et al.,<br><br>　　　　Respondents. | Case No. 25-cv-08998-JSC<br><br>**ORDER GRANTING TEMPORARY RESTRAINING ORDER**<br><br>Re: Dkt. No. 5 |

Before the Court is Petitioner's *Ex Parte* Motion for Temporary Restraining Order. (Dkt. No. 5.)  On October 19, 2025, Petitioner filed a Petition for Writ of Habeas Corpus, and on October 20, 2025, Petitioner filed an *Ex Parte* Motion for Temporary Restraining Order, against Respondents Acting Field Office Director Sergio Albarran, Acting Director of Immigration and Customs Enforcement Todd M. Lyons, Secretary of the Department of Homeland Security Kristi Noem, and United States Attorney General Pamela Bondi.  (Dkt. Nos. 1, 5.)  Petitioner asks this Court to (1) order his immediate release from Respondents' custody pending these proceedings, and (2) enjoin Respondents from "re-arresting him unless and until he is afforded a hearing before a neutral adjudicator to determine whether the government has provided clear and convincing evidence that he is a danger to the community or a flight risk such that incarceration is justified." Dkt. No. 5 at 21.)[1]  For the foregoing reasons, the TRO is **GRANTED** as modified below.

**I.    BACKGROUND**

According to the record before the Court, Petitioner has resided in the United States since 1990. (Dkt. No. 5 at 3.) After his arrival, Petitioner was "recruited by federal immigration agents

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

… to work as a confidential informant in immigration and criminal investigations. He was induced to cooperate through repeated promises of protection, legal status, and safety for himself and his family[.]" (*Id.*) The former Immigration Naturalization Service ("INS"), now known as Immigration and Customs Enforcement ("ICE"), "issued him a Form I-210 (Voluntary Departure)" but "agents instructed him to ignore it and told him he was allowed to remain because of his confidential informant role." (*Id.*) Then, Petitioner "was issued a Form I-94 Arrival/Departure Record, which agents described as proof that he was 'paroled in' and was lawfully permitted to remain in the country while assisting them." (*Id.* at 4.) Petitioner served as a confidential informant between 1994 and 2000 and has since applied for an adjustment of status, which is still pending. (*Id.*)

On October 16, 2025, ICE arrested Petitioner during his adjustment-of-status interview while counsel was present. (*Id.* at 5.) Petitioner did not have a copy of his Form I-94 with him at the time, which would have provided proof of his lawful admission into the United States. (*Id.*) Rather, Petitioner's counsel possessed Petitioner's Form I-210, which indicated ICE had previously issued a Form I-94 to Petitioner. (*Id.*) Before Petitioner could present this evidence to the interview officer, the officer stated his computer was having technical difficulties; Petitioner's counsel believes the officer was "actually notifying ICE officers at the time." (*Id.*) "When the adjustment of status interview was 'seemingly concluded,' the [U.S. Citizenship and Immigration Services ("USCIS")] examining officer issued a notice that [Petitioner]'s case was being continued. However, immediately thereafter, two ICE officers, heavily armed, … hurriedly arrested [Petitioner.]" (*Id.*) Counsel believes Petitioner is still in ICE custody. (*Id.* at 6.)

On October 19, 2025, this Petition was filed. (Dkt. No. 1.) The next day, Petitioner's counsel provided notice of the Petition to Respondents' counsel. (Dkt. No. 9.) In the motion, Petitioner contends that his arrest and detention violate the Due Process Clause of the Fifth Amendment, both substantively (because Respondents allegedly have no valid interest in detaining him) and procedurally (because he was not provided with a pre-detention bond hearing).

## II.   LEGAL STANDARD

The standard for issuing a temporary restraining order is substantially identical to the

standard for issuing a preliminary injunction. *Washington v. Trump*, 847 F.3d 1151, 1159 n.3 (9th Cir. 2017). Thus, a party seeking a temporary restraining order must establish "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008). "[I]f a plaintiff can only show that there are serious questions going to the merits – a lesser showing than likelihood of success on the merits – then a preliminary injunction may still issue if the balance of hardships tips *sharply* in the plaintiff's favor, and the other two *Winter* factors are satisfied." *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014) (cleaned up) (emphasis in original). "[W]hen the Government is the opposing party," the final two factors "merge." *Nken v. Holder*, 556 U.S. 418, 435 (2009).

An injunction is a matter of equitable discretion and is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22. A "TRO 'should be restricted to . . . preserving the status quo and preventing irreparable harm just so long as is necessary to hold a [preliminary injunction] hearing, and no longer.'" *E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 779 (9th Cir. 2018) (quoting *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 439 (1974)).

### III.   DISCUSSION

As a preliminary matter, the Court finds that the requirements for issuing a temporary restraining order set out in Federal Rule of Civil Procedure 65(a)(1) are met in this case. Counsel states that they attempted to contact the Civil Division Chief at the U.S. Attorney's Office for the Northern District of California on October 20, 2025 and was told the Duty Attorney was not available to speak, so counsel left a voicemail. (Dkt. No. 5-1 ¶ 4.) Counsel "further advised Mr. Simmons that electronic service would be made of the Habeas Petition and the Motion for TRO to his email." (*Id.* ¶ 5). The Court ordered Petitioner's counsel to serve the Petition and Motion on Respondents' counsel and file a Proof of Service attesting to service. (Dkt. No. 7.) Petitioner's counsel filed an affidavit attesting to service that same day. (Dkt. No. 9.)

Petitioner has demonstrated a likelihood of success on the merits of his claim that his ongoing detention violates his procedural due process rights under the Fifth Amendment. Petitioner has a substantial interest in remaining out of custody, and the Due Process Clause entitles Petitioner to a bond hearing before an immigration judge prior to any arrest or detention. *Pinchi v. Noem*, --- F. Supp. 3d ----, 2025 WL 2084921, at *2-6 (N.D. Cal. July 24, 2025) (applying the three-part test established in *Mathews v. Eldridge*, 424 U.S. 319 (1976) to similar circumstances); *see also Pablo Sequen v. Kaiser*, --- F. Supp. 3d ----, 2025 WL 2203419, at *2 (N.D. Cal. Aug. 1, 2025) (collecting cases).

Petitioner has also demonstrated a likelihood of irreparable injury in the absence of temporary relief. The likely unconstitutional deprivation of liberty that Petitioner faces is an immediate and irreparable harm. "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017) (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)); *see also Warsoldier v. Woodford*, 418 F.3d 989, 1001-02 (9th Cir. 2005). "[I]t follows inexorably from [the] conclusion" that Petitioner's detention without a hearing is "likely unconstitutional" that his has "also carried [his] burden as to irreparable harm." *Hernandez*, 872 F.3d at 995. Additionally, "[t]he Ninth Circuit has recognized 'irreparable harms imposed on anyone subject to immigration detention' including 'the economic burdens imposed on detainees and their families as a result of detention, and the collateral harms to children of detainees whose parents are detained.'" *Diaz v. Kaiser*, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) (quoting *Hernandez v. Sessions*, 872 F.3d 976, 996 (9th Cir. 2017). Petitioner "has two minor U.S. citizen children. His wife is unable to take care of basic bills and other household tasks." (Dkt. No. 5 at 19.) Accordingly, the Court also finds Petitioner's continued detention will cause immediate and irreparable harm to Petitioner's family because "every day that [Petitioner] is detained leaves his family without a breadwinner as he is unable to provide for them." (*Id.*)

The final two *Winter* factors, the balance of the equities and public interest, also weigh heavily in favor of granting temporary relief. "[T]he public has a strong interest in upholding procedural protections against unlawful detention, and the Ninth Circuit has recognized that the

4

costs to the public of immigration detention are staggering." *Jorge M. F. v. Wilkinson*, No. 21-cv-01434-JST, 2021 WL 783561, at *3 (N.D. Cal. Mar. 1, 2021) (cleaned up); *see Melendres*, 695 F.3d at 1002 ("[I]t is always in the public interest to prevent the violation of a party's constitutional rights." (quotation omitted)); *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005) ("Generally, public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution."). As other courts in this district and others have concluded under similar circumstances, "the potential harm to [Petitioner] is significant, while the potential harm to the government is minimal." *Pablo Sequen*, 2025 WL 2203419, at *3. At most, the government faces a short delay in detaining Petitioner if it ultimately demonstrates that his detention is necessary to prevent danger to the community or flight. *See Jorge M. F.*, 2021 WL 783561, at *3; *Diaz v. Kaiser*, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025). The government is not "harmed in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983). And given the government has been aware of Petitioner's presence in the country for 30 years, that it used him as an informant, and that he has no criminal record, there is also no apparent harm to the government. (Dkt. No. 5 at 3.) Faced with "a conflict between [administrative] concerns and preventable human suffering, [the Court has] little difficulty concluding that the balance of hardships tips decidedly in [Petitioner's] favor." *Hernandez*, 872 F.3d at 996) (quoting *Lopez v. Heckler*, 713 F.2d 1432, 1437 (9th Cir. 1983)).

A TRO immediately releasing Petitioner is appropriate to return him to the status quo. *E. Bay Sanctuary Covenant*, 932 F.3d at 779. The status quo refers to "the last uncontested status which preceded the pending controversy." *Doe v. Noem*, 778 F. Supp. 3d 1151, 1166 (W.D. Wash. 2025) (quoting *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000)). That is the moment prior to Petitioner's likely illegal detention. *See Kuzmenko v. Phillips*, 2025 WL 779743, at *2 (E.D. Cal. Mar. 10, 2025) (granting a temporary restraining order requiring immediate release of the petitioner back to home confinement from custody, as a restoration of the status quo).

Because Petitioner satisfies all requirements for temporary injunctive relief and such relief

5

1  is necessary to restore the status quo, the TRO Motion is granted as detailed below.  This Order

2  accords with many other recent grants of temporary relief in similar circumstances.  *See, e.g.*, *Alva*

3  *v. Kaiser*, 2025 WL 2294917, at *3 (N.D. Cal. Aug. 7, 2025) (granting temporary restraining

4  order); *Singh*, 2025 WL 1918679, at *10 (granting preliminary injunction); *Doe v. Becerra*, 2025

5  WL 691664, at *8 (E.D. Cal. Mar. 3, 2025) (granting temporary restraining order); *see also Diaz*,

6  2025 WL 1676854 (granting temporary restraining order requiring pre-detention hearing before

7  re-detention of noncitizen out of custody five years); *Garcia v. Bondi*, 2025 WL 1676855, at *3

8  (N.D. Cal. June 14, 2025) (granting temporary restraining order requiring pre-detention hearing

9  before re-detention of noncitizen out of custody six years).

10      Finally, the Court exercises its discretion under Rule 65(c) to dispense with the filing of

11  bond.  "[T]here is no realistic likelihood of harm to the [Respondents] from enjoining [their]

12  conduct."  *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003).  Therefore, no security is

13  needed to ensure that Respondents will be reimbursed for "costs and damages sustained by . . .

14  hav[ing] been wrongfully enjoined or restrained."  Fed. R. Civ. P. 65(c).

15  **IV.   ORDER**

16      For the foregoing reasons, **IT IS HEREBY ORDERED** that Petitioner's Motion for

17  Temporary Restraining Order is **GRANTED** to preserve the status quo pending further briefing

18  and a hearing on this matter.  Respondents are **ORDERED** to immediately release Petitioner from

19  Respondents' custody and **ENJOINED AND RESTRAINED** from re-detaining Petitioner

20  without notice and a pre-deprivation hearing before a neutral decisionmaker, and from removing

21  Petitioner from the United States.  Respondents are also **ORDERED** to file a status update within

22  two days of the date of this Order confirming Petitioner has been released from detention. This

23  Order shall remain in effect until **November 12, 2025**.

24      Respondents are **ORDERED TO SHOW CAUSE** in person on **Tuesday, November 4,**

25  **2025 at 9:00 am** before Judge Jacqueline Scott Corley in Courtroom 8 – 19th Floor, 450 Golden

26  Gate Avenue, San Francisco, California at a hearing why a preliminary injunction should not

27  issue.  Respondents shall file a response to Petitioner's motion on or before **Monday, October 27,**

28

1  **2025**.  Any reply shall be filed on or before **Friday, October 31, 2025.**  The parties may meet and
2  confer to select a later hearing date with a different briefing schedule.
3       This Order disposes of Dkt. No. 5.
4  **IT IS SO ORDERED.**
5  Dated: October 20, 2025

*Jacqueline Scott Corley*
JACQUELINE SCOTT CORLEY
United States District Judge